William D. Hyslop
United States Attorney
Eastern District of Washington
David M. Herzog
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>DENNIS MICHAEL HOGAN,<br><br>Defendant. | Case No.: 2:18-CR-00058-RMP<br><br>United States' Sentencing Recommendation<br><br>Sentencing Hearing:<br>August 26, 2020, at 11:00 a.m.<br>Spokane, Washington<br><br>Court:<br>Hon. Rosanna Malouf Peterson<br>United States District Judge |

Plaintiff United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and David M. Herzog, Assistant United States Attorney, respectfully submits the following sentencing position with regard to Dennis Michael Hogan ("Defendant").

United States' Sentencing Position – HOGAN – page i

The United States recommends 15 years in custody, a lifetime of Supervised Release, a reasonable fine, restitution if any requests are made prior to sentencing, a $100 Special Assessment, and a $5,000 Special Assessment pursuant to the Victims for Justice of Trafficking Act of 2015.

Dated: August 19, 2020

William D. Hyslop
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

On February 18, 2020, pursuant to a Rule 11(c)(1)(C) plea agreement, Defendant Dennis Michael Hogan ("Defendant") pleaded guilty to Count Two of a Superseding Indictment, which charged him with Online Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). The Court accepted Defendant's guilty plea and has set the sentencing hearing for August 26, 2018, in Spokane, Washington, in person.

## II. Facts

The relevant facts are set forth in the *Factual Basis and Statement of Facts* section of the plea agreement (ECF No. 122, ¶ 6) and the *Offense Conduct* section of the Presentence Report ("PSIR"). (ECF No. 135, ¶¶ 13-59.) The United States also hereby incorporates and refers the Court to ECF No. 62, the United States' submission of relevant facts and Defendant's communications for the pretrial hearings.

The United States has no objections to the PSIR, and has previously submitted its response to its relevant conduct analysis. ECF No. 129.

Defendant's conduct is indisputably egregious. For a period of at least 20 months, he engaged in the online solicitation and production of images of child pornography of minor girls from the Philippines as young as 12 years old. He paid them for sexualized images of themselves and other victims, he received the images, he distributed images of child pornography to his victims to groom them, and he possessed numerous images of child pornography of his victims that he produced remotely.

United States' Sentencing Position – HOGAN – page 1

Defendant also traveled repeatedly to the Philippines, and used the Internet to entice illicit sexual conduct, namely, his attempts to engage in hands-on sex with these girls once he got to the Philippines. He traveled to the Philippines numerous times, and his communications before, during, and after his trips make it clear that he engaged in sex with minors while he was there. In one instance, after explicitly setting up a sexual encounter with Minor Female 3 at the Crown Regency Hotel in the Philippines, the text messages between Defendant and the girl stop as soon as she gets to his room, and then start again afterward with her telling him that she left her watch in his room. ECF No. 135, ¶¶ 26-28. As is true of nearly all child sex cases, there is no video of this encounter, and as is true of nearly all child sex tourism cases, the victims in the Philippines could not be located in preparation for sentencing. So, as is typical, there is no video or testimonial evidence that while Defendant was in that hotel room with that minor girl, Defendant engaged in sex with her. But this Court is not naïve, and need not turn a blind eye to the overall context of Defendant's travel to the Philippines. He repeatedly set up sexual rendezvouses with minor girls, and repeatedly traveled there to follow through.

It is rare that the United States makes categorical statements, but in this case it is appropriate: if Defendant truly met up with *any* of these minor girls in the Philippines for some purpose *other* than illicit sexual conduct, the United States encourages the defense to present *any* contemporaneous communication that demonstrates it. There are none.

United States' Sentencing Position – HOGAN – page 2

Defendant is no Romeo. As the Court can see from the PSIR and from the extensive communications filed by the United States at ECF No. 62, there is absolutely no evidence – none – that Defendant's interactions with these girls, such as they were, were those of a one-man Non-Governmental Organization ("NGO") who donated the equivalent of up to $60,000 to help these girls out, as he claims. ECF No. 149, at 15.

The Court need only review his actual messages: they are sexually crass, purely economic, and blatantly exploitative. Where are his text messages asking about their classes and how well they are doing in school? Where are his probing questions or mentorship about their future plans and dreams and what he can do to help them, as a person with First World resources? There are none. The evidence provided by Defendant's own words *at the time*, *when no one was looking*, are clear. All of his communications – *all of them* – are based exclusively on using these girls for sex and obtaining sexual images of them.

What's more, Defendant is incorrigible. Unbelievably, after HSI agents raided his house and took his digital devices (and he confessed to this conduct), Defendant was not dissuaded from continuing to do it. The United States later learned through a *completely separate* FBI investigation that he was continuing to engage with Minor Female 7. This time he simply encouraged her not to send him images and videos, but to engage in live sexual chats that Facebook could not save. ECF No. 135, ¶¶ 52-57.

Defendant also has no respect for the law. As this Court knows, Defendant violated the terms of his pretrial release. He used Snapchat, a social media platform that

deletes messages, and accessed the Internet, in direct violation of repeatedly-litigated pretrial conditions. Moreover, as part of the plea negotiations, the United States had to make arrangements to dismiss an allegation of assault in Stevens County while Defendant was on pretrial release. Defendant is simply not a person who respects the law.

Defendant has technically accepted responsibility for his conduct, in that he pleaded guilty before trial. But his own post-arrest statements and the litigation history of this case tells the story of someone who legitimately did not think he had done anything wrong until he was faced with the likelihood of a functional life sentence after conviction at trial on the panoply of charges in the Superseding Indictment.

In short, Defendant richly deserves every minute of a 15-year sentence, which is significantly below the Guidelines range for his actual conduct. He treats girls as commodities for his own satisfaction and pleasure, and he exploits the economic differences between the United States and the developing world for his own sexual gratification. If the United States' commitment to being a world leader in human and civil rights is not to ring hollow, our court system must protect all children who are preyed upon by American pedophiles, not just those within our borders.

That is particularly true of victims of child sex tourism in the developing world – it should come as no surprise that the places where a person can openly buy a child for sex, including some parts of the Philippines as demonstrated by this case, are the same places that lack the criminal justice infrastructure to do anything meaningful about it.

The Court will note that even with the assistance of the United States Embassy in the Philippines, the Philippine authorities were not able to identify a single child victim for purposes of seeking restitution or making a victim impact statement at sentencing. That is no accident; child sex tourists seek out victims in the developing world both to take advantage of the severe economic disparity (Defendant only had to spend $19 for graphic images of child pornography in this case) and because victims simply disappear in places where there is no FBI or HSI agent to find them.

When an American travels abroad to get access to impoverished child victims, it is incumbent on the United States criminal justice system to take that conduct seriously and impose significant sentences. A sentence any lower than 15 years in this case would fail to hold Defendant accountable for his truly appalling conduct.

**III.    Analysis of the Plea Agreement and Presentence Report**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the following sentence is an appropriate disposition: 10 to 15 years in custody, and a lifetime of Supervised Release. A cap of 180 months is already an incredible benefit to Defendant, given the Guidelines range he faces. For the reasons set forth in the United States' response to the PSIR, ECF No. 129, the United States concurs with the PSIR's analysis. Defendant has an offense level of 39 after acceptance of responsibility, and is in Criminal History Category I, yielding an advisory Guidelines range of 262-327 months for all of his sexual misconduct with his Filipina victims. ECF No. 135, ¶ 176.

The United States agreed to dismiss other significant charges. ECF No. 122, ¶ 7.

## IV. The United States' Sentencing Recommendation

In light of the plea agreement, Federal Rule of Criminal Procedure 11, the United States Sentencing Guidelines, and the factors set forth at 18 U.S.C. § 3553, the United States respectfully recommends the following sentence: 15 years in custody, a lifetime of supervised release, a reasonable fine, restitution if requests are made, special assessments of $100 and $5,000, and the costs of incarceration and supervision.

### A. The Nature and Seriousness of the Offense and Defendant's Lack of Respect for the Law

Given the extensive briefing that the Court has already had to review in this case, the United States will not belabor the point: Defendant's sexual misconduct was horrendous. The Court need not even conclude that he engaged in hands-on sex with minors to impose a 15-year sentence. Nevertheless, the United States submits that his contemporaneous communications and the reasonable inferences to be drawn therefrom demonstrate by a preponderance that he did, and that should greatly concern the Court. He is a danger and he will continue to be a danger, as demonstrated by his ongoing lack of respect for the law – both by continuing to engage in misconduct after a federal search warrant was executed at his house, and by violating the terms of his pretrial supervision.

Defense counsel has done an admirable job of trying to put lipstick on the proverbial pig in Defendant's sentencing papers, but the Court will note how little time the defense spends on the actual conduct at issue. It is clear that the nature and severity of Defendant's conduct was manifested in ongoing, repeated sexual exploitation of

incredibly poor girls in the developing world, for his own sexual gratification. That is what matters here, and that is what should concern the Court when it balances the factors set forth at 18 U.S.C. § 3553(a) to impose a fair and just sentence.

To believe Defendant's accounts of his trips to the Philippines, the Court would have to ignore every one of the hundreds, if not thousands, of communications the Court has reviewed, in which Defendant does nothing but seek out sex with minors. The United States submits that the best test for Defendant's intent and motive when he traveled is demonstrated *by his own words at the time*, when the United States Attorney's Office, the United States Probation Office, and most importantly, the Court, were not looking. Defendant repeatedly reached out to girls he had never met, paid them for child pornography, arranged to meet up with them for sex in the Philippines, and then followed through on those plans. His § 2422(b) charges show that: the criminal conduct that he enticed through the Internet was attempted sex with minors. ECF No. 134, at 2-3.

Defendant has shed tears at a number of hearings in this case, but those tears have *never* been for his victims, only for himself. It is wonderful that Defendant appears to be a good father. It would have been even better if he had ever expressed any capacity to recognize that each of his child victims was not a sexual object, but a real live human being who has a father who loves her too.

Defendant's suggestion that he was seeking out love or potentially *marriage* in his relationships with women and/or girls in the Philippines would be laughable if it were

not so offensive, given his communications. Again, the United States defies the defense to present a single piece of evidence from the discovery in this case that supports this contention. There are none.

**B.     Defendant's Personal History and Characteristics**

Defendant's personal history and characteristics do not appear to be mitigating in any way. Unlike so many Defendants before the Court, Defendant does not appear to have suffered physical, sexual, or emotional abuse in his own childhood; he appears to have had a stable and loving upbringing. He also clearly has resources that many Defendants before this Court do not. The United States respectfully submits that a sentence of fifteen years is sufficient but not greater than necessary to achieve the statutory goals of sentencing. A lower sentence would fail to take into account the relentless severity and dangerousness of his conduct. The United States' recommendation of 180 months is still months is still 82 full months below the 262-month low-end of his Guidelines range, and *half* of what his Guidelines range would likely have been for the charges in the Superseding Indictment (360-life or life).

**C.     Just Punishment, Deterrence, and Protection of the Public**

Defendant's serious criminal conduct demands serious punishment, and the United States respectfully submits that here, a significant custodial sentence is necessary to achieve that goal. Fifteen years is necessary to deter Defendant from committing future child sexual exploitation offenses for the very reason that it is a long time. As the "deterrence" factor of the sentencing statute recognizes, human beings are driven by

United States' Sentencing Position – HOGAN – page 8

incentives and disincentives.  The United States respectfully submits that the only way to make sure that Defendant is truly deterred from engaging in this kind of conduct in the future is to make the consequence of his actions so unpalatable that if he ever gets the urge to seek out another minor girl for her "nice pussy" that "maybe [he] can lick", ECF No. 135, ¶ 18, he thinks to himself "the last time I engaged in sexual conduct with a minor, I went to federal prison for fifteen years – I do not want that to happen again."

It is also important as a matter of general deterrence that members of the public who might be tempted to ignore criminal laws – as Defendant was – to know that there are serious consequences for engaging sexually with minors online, whether that is requesting child pornography or setting up in-person meetings.  *See United States v. Martin*, 469 F. App'x 561, 562 (9th Cir. 2012) (a District Court is "entitled to give substantial weight to the harm caused to society by child pornography and the goal of general deterrence").

In fact, the Sixth Circuit has rejected a District Court's sentence where it failed to see the importance of general deterrence.  *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012) (finding "inexplicable" the District Court's statement that "general deterrence . . . will have little [if] anything to do with this particular case" and reaffirming that "general deterrence is crucial in the child pornography context[.]").  A sentence shorter than fifteen years is unlikely to create a strong deterrent effect for child pornography and international child exploitation conduct.

Critically, a significant custodial term will also protect children from Defendant – if the Court accepts the plea agreement, Defendant will not have access to minors for a long time, and he will continue to be monitored around children for the rest of his life. In this way, the United States' recommended sentence will serve society's interest in maintaining the sexual sanctity of minors, while hopefully increasing Defendant's respect for the law.

### D.    Avoidance of Unwarranted Sentencing Disparities

The best way to ensure consistent sentences for similarly-situated Defendants across the country is for courts to apply the sentencing Guidelines in the same manner everywhere. *United States v. Guerrero-Velasquez,* 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that the Guidelines "help to maintain uniformity in sentencing throughout the country"); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly."). Here, mindful that the Guidelines must be "the starting point and the initial benchmark," *United States v. Carty,* 520 F.3d 984, 991–92 (9th Cir. 2008), the United States submits that a Rule 11 sentence 82 months below the 262-327-month Guidelines range carries almost no risk of creating an unwarranted sentence disparity that is to Defendant's detriment.

### E.    Fine, Special Penalty Assessment, Restitution, and Forfeiture

The United States and Defendant are free to make any recommendations concerning the imposition of a fine. The Probation Officer has analyzed Defendant's

financial condition and concluded that he may have the ability to pay a fine, just not one as high as the statutory range. The United States respectfully defers to the Court on this issue; all Defendants should pay financial penalties for their conduct as envisioned by the United States Code, and Defendant is one who can actually do so. The United States requests that the Court impose the $100 and $5,000 Special Assessments before the payment of any fine, so the money goes first to the Victims of Trafficking fund.

## V.     Conclusion

Defendant's total offense level is 39 and his Criminal History is in Category I, yielding a Guidelines range of 262-327 months. For the reasons set forth herein, the United States recommends a sentence of 15 years in custody, a lifetime of supervised release, a reasonable fine, special assessments of $100 and $5,000, and the costs of incarceration and Supervised Release that Defendant has the ability to pay.

Dated: August 19, 2020             William D. Hyslop
                                   United States Attorney

                                   *s/ David M. Herzog*
                                   David M. Herzog
                                   Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to Defendant's counsel of record using the CM/ECF system.

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney